# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

O.M., by and through his parents )
NICOLE McWHIRTER and ARRAN )
McWHIRTER, NICOLE McWHIRTER, and )
ARRAN McWHIRTER, )
                                 )
                Plaintiffs,      )
                                 )
        v.                       )    1:09CV692
                                 )
ORANGE COUNTY (N.C.) BOARD OF    )
EDUCATION,                       )
                                 )
                Defendant.       )

## MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge on: (1) the Motion to Dismiss (Docket Entry 19) filed by Orange County (N.C.) Board of Education (the "Board"); (2) the Board's Motion to Join the State of North Carolina (the "State") and the North Carolina State Board of Education (the "State Board," collectively with the State, the "State Parties") (Docket Entry 15); and (3) the Motion for Judgment on the Pleadings (Docket Entry 22) filed by O.M. and his parents, Nicole and Arran McWhirter (the "Parents," collectively with O.M., "Plaintiffs"). For the reasons that follow: (1) the Board's Motion to Dismiss (Docket Entry 19) should be denied; (2) the Board's Motion to Join the State Parties (Docket Entry 15) is denied; and (3) Plaintiffs' Motion for Judgment on the Pleadings (Docket Entry 22) should be denied.

## I.  LEGAL FRAMEWORK

Plaintiffs bring this action pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. (the "IDEA"). (See Docket Entry 9.)  "The IDEA requires all states receiving federal education funds to provide disabled school-children with a 'free appropriate public education' ('FAPE')."  M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd., 553 F.3d 315, 319 (4th Cir. 2009) (citing 20 U.S.C. § 1412(a)(1)(A)).[1]  "A FAPE 'consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction.'" Id. (quoting Board of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 188-89 (1982)).  "[A] FAPE must be reasonably calculated to confer some educational benefit on a disabled child."  MM ex rel. DM & EM v. School Dist. of Greenville Cnty., 303 F.3d 523, 526 (4th Cir. 2002) (citing Rowley, 458 U.S. at 207).  "Such an educational benefit must be provided to a disabled child in the least restrictive and appropriate environment, with the child participating, to the extent possible, in the same activities as non-disabled children." Id. (citing 20 U.S.C. § 1412(a)(5)(A)).

---

[1] The IDEA defines a "child with a disability" as including a child with "autism" who, as a result, "needs special education and related services."  20 U.S.C. § 1401(3)(A)(i).  The parties do not dispute that O.M. meets this criteria.  (Docket Entry 9, ¶ 1; Docket Entry 12 at 1, ¶ 1.)

"A school provides a FAPE by developing an IEP [individualized education program] for each disabled child." J.P. ex rel. Peterson v. County Sch. Bd. of Hanover Cnty., 516 F.3d 254, 257 (4th Cir. 2008). "An appropriate IEP must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." MM, 303 F.3d at 527 (citing 20 U.S.C. § 1414(d)(1)(A)). The IEP is prepared by an IEP team, which includes the child's parents, regular education teacher, special education teacher, a representative of the local educational agency ("LEA"),[2] and the child, if appropriate.  20 U.S.C. § 1414(d)(1)(B).[3]

"Congress incorporated [into the IDEA] an elaborate set of what it labeled 'procedural safeguards' to insure the full participation of the parents and proper resolution of substantive disagreements." School Comm. of Burlington v. Department of Educ. of Mass., 471 U.S. 359, 368 (1985). Those procedural safeguards permit parents to present complaints regarding the provision of a FAPE.  20 U.S.C. § 1415(b)(6)(A).  "Whenever a complaint has been received . . ., the parents . . . shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency [("SEA")] or by the [LEA], as determined

---

[2] The IDEA defines a LEA as including "a public board of education . . . ."  20 U.S.C. § 1401(20)(A).  The parties do not dispute that the Board is a LEA.  (Docket Entry 9, ¶ 3; Docket Entry 12 at 2, ¶ 3.)

[3] An IEP team may include others.  20 U.S.C. § 1415(d)(1)(B).

3

by State law or by the [SEA]." 20 U.S.C. § 1415(f)(1)(A).[4] "If the hearing . . . is conducted by the [LEA], any party aggrieved by the finding and decision . . . may appeal . . . to the [SEA]." 20 U.S.C. § 1415(g)(1).

North Carolina has a two-tiered administrative process. <u>See</u> N.C. Gen. Stat. §§ 115C-109.6, 115C-109.9. At the first tier, "any party may file with the Office of Administrative Hearings [('OAH')] a petition to request an impartial hearing with respect to any matter relating to the provision of a [FAPE] of a child[.]" N.C. Gen. Stat. § 115C-109.6(a).[5] The OAH then selects an Administrative Law Judge ("ALJ"), N.C. Gen. Stat. § 115B-32(a), who "issue[s] a written decision," N.C. Gen. Stat. § 115C-109.6(f). At the second tier, "[a]ny party aggrieved by the findings and decision of a hearing officer . . . may appeal . . . by filing a written notice of appeal with the person designated by the State Board." N.C. Gen. Stat. § 115C-109.9(a). At that point, "[t]he State Board . . . appoint[s] a Review Officer [('SRO')] to] . . . conduct an impartial review of the findings and decision appealed . . . [and] make an independent decision upon completion of the review." N.C. Gen. Stat. § 115C-109.9(a).

---

[4] The IDEA defines the SEA as "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools, or, if there is no such officer or agency, an officer or agency designated by the Governor or by State law." 20 U.S.C. § 1401(32).

[5] "The [OAH] is an independent, quasi-judicial agency under Article III, Sec. 11 of the [North Carolina] Constitution . . . ." N.C. Gen. Stat. § 7A-750.

Under both federal and North Carolina law, a party dissatisfied with the SRO's decision may file a civil action in state or federal court. See 20 U.S.C. § 1415(i)(2)(A); N.C. Gen. Stat. § 115C-109.9(d). "The IDEA . . . requires the district court to 'receive the records of the administrative proceedings,' 20 U.S.C.A. § 1415(i)(2)(C)(i), an obligation that carries with it the implied requirement that due weight shall be given to these proceedings.' Rowley, 458 U.S. at 206." J.P., 516 F.3d at 259. The United States Court of Appeals for the Fourth Circuit has interpreted "Rowley's 'due weight' requirement to mean that the finding of fact made in the state administrative proceedings must 'be considered prima facie correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it.'" Id. (citing Doyle v. Arlington Cnty. Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991)).

A LEA must allocate a proportional amount of federal IDEA funds to provide "special education and related services" to children enrolled in private schools, 20 U.S.C. § 1412(a)(10)(A)(i), but need not "pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if [the LEA] made a [FAPE] available . . . ." 20 U.S.C. § 1412(a)(10)(C)(i). However, "[w]hen a state receiving IDEA funding fails to provide a FAPE, the child's parent may remove the child to a private school and then seek tuition reimbursement from the state." A.B. ex rel. D.B. v. Lawson, 354 F.3d 315, 320 (4th Cir. 2004) (citing School Comm. of

Burlington, 471 U.S. at 369-70). The IDEA-mandated due process procedures do not apply to complaints that an LEA "failed to meet the requirements [for disabled children unilaterally placed by parents in private school]," 34 C.F.R. § 300.140(a)(1), but instead such complaints "must be filed in accordance with [a separate state complaint process]," 34 C.F.R. § 300.140(c)(1). Conversely, "[d]isagreements . . . regarding the availability of a [FAPE], and the question of financial reimbursement, are subject to the [IDEA-mandated] due process procedures . . . ." 34 C.F.R. § 300.148(b).

## II. BACKGROUND

The parties agree that, in May and June of 2008, staff of the Orange County Schools (the "School System") observed O.M. while he participated in a playgroup at Pathways Elementary School, a public school in the School System. (Docket Entry 12 at 18, ¶ 4; Docket Entry 13, ¶ 4.)[6] The Board alleges that, at an IEP team meeting on July 22, 2008, "[S]chool [S]ystem staff proposed that O.M. receive three hours of special education services per week in the Pathways playgroup, as well as occupational therapy." (Docket Entry 12 at 18, ¶ 6.) According to the Board, "Arran McWhirter . . . and Casey Palmer, [P]laintiffs' private autism consultant, objected to the proposed placement, stating that the playgroup was not the appropriate setting and that three hours per week was not enough."

---

[6] Because the Board's Answer to First Amended Complaint and Counterclaim (Docket Entry 12) re-starts its paragraph-numbering sequence when it moves from the answer portion to the counterclaim portion, pin cites to said document list the page number followed by the paragraph number.

(Id. at 19, ¶ 10.) In the Board's view, the IEP team discussed "other possible options, including the [Parents] securing a placement in a preschool program [and] . . . agreed to reconvene the following week to finalize O.M.'s IEP." (Id. at 19, ¶ 11.)

The Board maintains that, at an IEP team meeting on July 30, 2008, "the [S]chool [S]ystem again offered O.M. placement in the Pathways playgroup for three hours per week" (id. at 19, ¶ 12), but Nicole McWhirter and Palmer "insisted that [O.M.] needed a full-day program" (id. at 20, ¶ 16). Further, according to the Board, "[a]t the conclusion of the meeting, Lisa Combs, the [LEA] representative, discussed with Ms. McWhirter, Ms. Palmer, and Lisa Dankner, a family friend, the provision of the DEC 5 form, or 'Prior Written Notice.'" (Id. at 20, ¶ 18.)[7] The Board alleges that, Combs "stated that the DEC 5 would reflect . . . three hours per week of special education in the Pathways playgroup and one hour per week of occupational therapy." (Id. at 4-5, ¶ 21.) In the Board's view, "everyone agreed that the DEC 5 would be provided . . . within 10 days." (Id. at 21, ¶ 22.) Additionally, the Board acknowledges that "Plaintiffs were not provided with a DEC 6, the form on which parents provide written consent for special education services at the meetings in July 2008." (Id. at 21, ¶ 23.)

---

[7] Under North Carolina law, "[t]he [LEA] shall provide prompt written notice to parents whenever that agency proposes to initiate or change, or refuses to initiate or change (i) the identification, evaluation, or educational placement of a child, or (ii) the provision of a [FAPE] to a child with a disability." N.C. Gen. Stat. § 115C-109.5(a).

According to the Board, "Ms. McWhirter emailed Ms. Combs multiple times after the July 30, 2008, IEP meeting and before receiving the DEC 5, asking the [S]chool [S]ystem to describe how the services on O.M.'s IEP would be delivered in a private setting." (Id. at 21-22, ¶ 28.) The Board asserts that "Combs asked the [S]chool [S]ystem's Exceptional Children's program director, Milinda Grenard, for assistance in drafting the DEC 5 . . ., [although she] had not had any contact regarding O.M. with the [S]chool [S]ystem staff that had been participating in O.M.'s IEP meetings." (Id. at 21, ¶ 24; see also id. at 21, ¶ 25 (stating that "Grenard asked the [S]chool [S]ystem's counsel to draft the DEC 5, based on the information provided by the IEP team members, the meeting minutes and the audiotape of the July 30 meeting"). In addition, the Board claims that, "[b]ecause the [S]chool [S]ystem was in the process of providing the DEC 5, Ms. Grenard told Combs not to respond to the emails." (Id. at 21-22, ¶ 28.)

In the Board's view, the Parents "enrolled O.M. in a regular preschool on September 2, 2008, but did not inform the [School System] of this until September 10, 2008 in a letter to Ms. Grenard in which they stated for the first time that they intended to seek reimbursement from the [S]chool [S]ystem for their private placement." (Id. at 22, ¶ 30.) The Board further alleges that:

O.M.'s IEP team reconvened on October 13, 2008, to determine whether O.M. was eligible for speech language services. At that meeting, [the Parents] for the first time disclosed the location of O.M.'s private preschool. [The Parents] also stated that they had never been asked to consent to services. The DEC 6 form was provided to

8

[the Parents], who signed the form and returned it to the [S]chool [S]ystem . . . .

(Id. at 22, ¶ 31.)  According to the Board, on October 29, 2008, after the School System "determin[ed] that the private preschool was located within the [its] boundaries . . ., [it] began providing O.M. with three hours per week of special education services, as well as speech and occupational therapy . . . at Our Playhouse preschool, [P]laintiffs' private program."   (Id. at 22, ¶ 32.)

Plaintiffs contend that, on December 1, 2008, the Parents filed with the OAH a Petition (Docket Entry 9, ¶ 5), in which they alleged "that O.M. 'ha[d] been denied a [FAPE],' [and] that, as a result, [they] enrolled O.M. in an appropriate private placement and paid for private specialized instruction and related services . . . [such that they requested] reimbursement for the cost of tuition for the private educational placement, private specialized instruction services, and private related services, which [they] incurred in order to provide O.M. an appropriate education for the 2008-09 school year" (id. ¶ 6).  Further, Plaintiffs allege that, on June 18, 2009, the ALJ determined O.M. was denied a FAPE, the private placement was appropriate, and the Parents were entitled to reimbursement.  (Id. ¶¶ 10-23.)

More specifically, according to Plaintiffs, the ALJ found that the Board:

(1) "failed to provide O.M. a [FAPE] in the least restrictive environment" (id. ¶ 14);

9

(2) "fail[ed] to provide [the Parents] with an opportunity to consent to the services to O.M. . . . depriv[ing] O.M. of all of the educational services that O.M.'s IEP prescribed, until October 28, 2008, more than two months after the school year began" (id. ¶ 15);

(3) failed to develop an IEP designed to "make meaningful progress towards [O.M.'s IEP Team's] specific goals and objectives" (id. ¶ 16);

(4) "deprived [the Parents] of their right to participate[,]" because "an outsider to [O.M.'s] IEP Team made the placement and services decision" (id. ¶ 17); and

(5) failed "to offer an IEP . . . calculated to meet the . . . needs O.M[.]'s IEP Team identified" (id. ¶ 18).

The parties agree that the Board filed a Notice of Appeal to the SEA. (Id. ¶ 26; Docket Entry 12 at 5, ¶ 26.) They further concur that the SRO subsequently concluded:

(1) "the Board deprived O.M. of a [FAPE]" (Docket Entry 9, ¶ 34; see also Docket Entry 12 at 7, ¶ 34);

(2) the Board "caused a deprivation of educational opportunities and/or [the Parents'] rights to participate meaningfully in the development of O.M.'s IEP" (Docket Entry 9, ¶ 34; see also Docket Entry 12 at 7, ¶ 34);

(3) "O.M.'s private placement was appropriate" (Docket Entry 9, ¶ 35; see also Docket Entry 12 at 7, ¶ 35); and

(4) "Plaintiffs were entitled to appropriate relief under the IDEA" (Docket Entry 9, ¶ 36; see also Docket Entry 12 at 7, ¶ 36).

The Board alleges that the SRO reached its conclusions regarding the deprivation of a FAPE and the Parents' right to participate on the grounds that:

(1) "[t]he IEP team did not give the required Prior Notice at the conclusion of the July 30, 2008, IEP meeting" (Docket Entry 12 at 23, ¶ 35);

(2) "[t]he Board allowed someone not involved in the IEP decision making process to draft the Prior Written Notice" (id.);

(3) "[t]he Board failed to obtain informed consent to provide services prior to October 16, 2008" (id.); and

(4) "[t]he Board failed to implement the services in O.M.'s IEP until October 29, 2008" (id.).[8]

Upon the conclusion of the state administrative proceedings, Plaintiffs filed in this Court their Complaint against the Board (Docket Entry 1), which they later amended (Docket Entry 9). The Amended Complaint alleges claims for:

(1) attorney's fees and costs (id. ¶¶ 66-75);

(2) reimbursement of educational costs (id. ¶¶ 76-83);

(3) a declaration that the SRO's decisions are void as a matter of law (id. ¶¶ 84-90, 97(a)); and

_____

[8] The parties agree the SRO reduced the reimbursement because he concluded that Plaintiffs failed to properly notify the Board of O.M.'s private placement. (Docket Entry 9, ¶ 42; Docket Entry 12 at 8, ¶ 42.)

(4) a declaration that the SRO's decisions were not "regularly made" (id. ¶¶ 91-96, 97(a)).[9]

In response, the Board filed its Answer to the Amended Complaint and Counterclaim (Docket Entry 12), in which it alleges these four separate "Claim[s] for Relief":

(1) "[t]he Board is aggrieved by the [SRO's] decision concluding that O.M. was denied a [FAPE] when the [S]chool [S]ystem failed to provide the DEC 5 at the conclusion of the [July 30, 2008] IEP meeting and allowed an individual who was not a member of the IEP team to draft the DEC 5" (id. at 23, ¶ 37);

(2) "in the event that this Court determines that the [SRO's] decision is void, the Board is aggrieved by the ALJ's finding that the final decisions regarding O.M. were improperly delegated to someone outside the IEP team meeting process" (id. at 24-25, ¶ 44);

(3) "[t]he Board is aggrieved by the [SRO's] decision (and, in the alternative, the ALJ's decision) concluding that the Board . . . deni[ed] [O.M. a] FAPE when it failed to provide [the Parents] with a DEC 6 prior to October 13, 2008 . . . and concluding that O.M. was denied a [FAPE] when the [S]chool [S]ystem failed to provide services to O.M. between August 25, 2008, and October 29, 2008" (id. at 25-26, ¶¶ 50-51); and

---

[9] Plaintiffs assert that they "were the 'prevailing parties in . . . the administrative proceedings below, [but] are nevertheless 'aggrieved' by having to incur the burden and expense of defending their award [by the ALJ] in [connection with the Board's] unauthorized appeals to the [SRO], and by the [SRO's] reduction of Plaintiffs' reimbursement award." (Docket Entry 9, ¶ 41.)

(4) "[i]n the event that this Court determines that the [SRO's] decision is void, the Board is aggrieved by the ALJ's finding that the program proposed by the Board at the July 30, 2008, IEP team meeting denied O.M. a FAPE because it was not reasonably calculated to meet O.M.'s needs in the least restrictive environment" (id. at 27-28, ¶ 64).

After Plaintiffs answered the Board's counterclaim (Docket Entry 13), the Board moved to join the State Parties. (Docket Entry 15 at 2.) Plaintiffs responded (Docket Entry 18) and the Board filed no reply (see Docket Entries dated Mar. 28, 2010, to present). The Board subsequently filed its instant Motion to Dismiss (Docket Entry 19), to which Plaintiffs responded (Docket Entry 21), and to which the Board failed to reply (see Docket Entries dated June 7, 2010, to present). Finally, Plaintiffs filed their instant Motion for Judgment on the Pleadings (Docket Entry 22), to which the Board responded (Docket Entry 26), and as to which Plaintiffs replied (Docket Entry 29).

## III. DISCUSSION

### A. The Board's Motion to Dismiss

The Board moves to dismiss at least part of Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Docket Entry 19 at 1.) Specifically, the Board argues that "[P]laintiffs' claim that the Board denied O.M. a FAPE when it failed to provide him with the services on his IEP at his private school should be dismissed," because the IDEA-mandated "due process hearing is **not** available to

13

contest the district's provision of services" and Plaintiffs instead should have utilized a separate "state complaint process." (Docket Entry 20 at 3-4 (emphasis in original) (citing 34 C.F.R. §§ 300.140, 300.148(b)).)  Where, as here, a motion "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based . . ., all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  Accordingly, in this case, "the motion must be denied if the [Amended] [C]omplaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Actions arising under the IDEA thus fall within Section 1331 and the IDEA expressly grants courts "jurisdiction of actions brought under [Section 1415]," 20 U.S.C. § 1415(i)(3)(A).  Under Section 1415, at the end of the administrative component of the due process hearing procedures, a party "aggrieved" by the administrative decision may bring a federal lawsuit.  20 U.S.C. § 1415(i)(2)(A).  Moreover, a party may employ the IDEA-mandated due process hearing procedures (that ultimately can lead to federal court) to resolve "[d]isagreements . . . regarding the availability of a [FAPE], and the question of financial reimbursement . . . ." 34 C.F.R. § 300.148(b).  However,

14

the applicable federal regulations require that plaintiffs use a separate state complaint process to address matters concerning whether a school system provided services to a child whose parents chose a private placement.  See 34 C.F.R. § 300.140(c)(1).

The Board admits that, in the instant action, "the district's provision of [a] FAPE is at issue." (Docket Entry 20 at 3.) Indeed, Plaintiffs allege that, at the ALJ hearing, they argued that the Board "deprived O.M." of a FAPE (Docket Entry 9, ¶ 7) and that the ALJ found that the Board "deprived Plaintiffs of a [FAPE]" (id. ¶ 10).  Moreover, Plaintiffs have asserted that the SRO determined the Board "'did not offer O.M. a FAPE'" and "deprived O.M. of a FAPE." (Id. ¶ 34.)  Because Plaintiffs complained about the timely provision of a FAPE, they properly utilized the due process hearing procedures to assert claims related to the lack of a FAPE, including during the first part of the 2008-09 school year.

Nevertheless, the Board contests the existence of subject matter jurisdiction, at least in part, because:

> in addition to seeking full reimbursement for their private placement expenses <u>plaintiffs are also claiming the district was obligated to provide special education and related services to their son while he attended private school</u>.
>
> [A] due process hearing is **not** available to contest . . . the district's provision of services to the student in the private school setting.

(Docket Entry 20 at 3 (bold emphasis in original, underlined emphasis added).)  The IDEA provides, in relevant part, that:

> If the parents . . . enroll the child in a private elementary school. . . without the consent of or referral by the public agency, <u>a court or a hearing officer may require the agency to reimburse the parents for the cost</u>

15

> of that enrollment if the court or hearing officer finds
> that the agency had not made a [FAPE] available to the
> child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added). A plaintiff who seeks reimbursement on such grounds, therefore, must employ the due process procedures. The Court thus has subject matter jurisdiction over such a reimbursement claim. See generally M.M. ex rel. C.M. v. School Bd. of Miami-Dade Cnty., 437 F.3d 1085, 1101 (11th Cir. 2006) ("[T]he ALJ and the district court did have jurisdiction to award C.M.'s parents reimbursement for tuition and related services, . . . if C.M. had been denied a FAPE."). Accordingly, the Board's Motion to Dismiss (Docket Entry 19) should be denied.

B.  The Board's Motion to Join the State Parties

The Board has moved "to join the [State Parties] as co-defendants, pursuant to Federal Rule of Civil Procedure 19(a)." (Docket Entry 15 at 1.) Said rule states, in relevant part, as follows:

> **(1) *Required Party*.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

16

> **(2)** **_Joinder by Court Order._** If a person has not been joined as required, the court must order that the person be made a party. . . .

Fed. R. Civ. P. 19(a) (underlining added) (bold and italics in original).

"Thus, Rule 19(a)(1)(A) focuses on the relief to existing parties, whereas Rule 19(a)(1)(B) focuses on the interest of the absent person and the effect, if any, his absence would have on either himself or the existing parties." Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 517 (M.D.N.C. 2008) (Schroeder, J.). "The burden is on the movant to show that the person who was not joined is necessary for a just adjudication and 'the nature of the unprotected interests of the absent parties.'" United States v. Rawlings, Civil Action No. DKC 09-2112, 2010 WL 2292508, at *3 (D. Md. June 3, 2010) (unpublished) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1359 (2d ed. 1990); see also Pettiford, 556 F. Supp. 2d at 517 ("The burden of proof is on the moving party to demonstrate that the absent person must be joined to facilitate a just adjudication." (citing American Gen. Life and Accident Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005))). Here, the Board argues that: (1) the absence of the State Parties will "impair or impede [the State Parties'] ability . . . to protect their interest in determining their obligations under the [IDEA]" (Docket Entry 15 at 3); and (2) "the disposition of [Plaintiff's challenge to the two-tier administrative hearing process] would leave the [Board], . . . subject to inconsistent obligations in future due process proceedings" (id.).

17

Both of these arguments for joinder fall within Rule 19(a)(1)(B), with the first argument falling under sub-division (i) and the second argument falling under sub-division (ii). Because the Board's arguments arise under Rule 19(a)(1)(B), it must show that the State Parties "claim[] an interest relating to the subject of the action," Fed. R. Civ. P. 19(a)(1)(B) (emphasis added). "To satisfy this burden, the movant should 'present affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence.'" Rawlings, 2010 WL 2292508, at *3 (quoting Wright & Miller, supra).

In the face of its burden to prove that the State Parties have claimed a relevant interest in this litigation (as well as the nature of that interest), the Board has offered only the following: "While the [State Parties] acknowledge that they have an interest in the outcome of Plaintiffs' claim that the two-tier administrative process violates the IDEA, they object to being joined as parties in this action because they believe that the claim is not cognizable under the IDEA and that [P]laintiffs do not have standing to raise the claim." (Docket Entry 15 at 3-4 (emphasis added).) As Plaintiffs have argued (see Docket Entry 18 at 3-12),[10] this showing does not suffice for at least two reasons.

_____

[10] In addition to Plaintiffs' merits-based arguments opposing the Board's instant Motion to Join the State Parties, Plaintiffs assert that the Board "failed to submit a brief supporting [said] Motion, in violation of [this Court's Local Rule] 7.3(a), and [said] Motion should be denied on that basis alone, pursuant to [this Court's Local Rule] 7.3(k)." (Docket Entry 18 at 3.) Section (a) of the Local Rule cited by Plaintiffs states, in relevant part, that "[a]ll motions, unless made during a hearing or
(continued...)

18

First, the Board has offered no <u>evidence</u> on point (as it should have, <u>see</u> <u>Rawlings</u>, 2010 WL 2292508, at *3), but instead the Board simply has made a somewhat ambiguous proffer about the State Parties' views. "A party named in the litigation cannot assert the interest on the absent party's behalf. . . . Defendants['] attempt to assert the interest [of an absent party] . . . is not sufficient to make [the absent party] a necessary party." <u>Continental Cas. Co. v. American Home Assurance Co.</u>, No. 05 Civ. 7874(LTS)(JCF), 2008 WL 1752231, at *4 (S.D.N.Y. Apr. 14, 2008) (unpublished). Indeed, this Court (per the late Judge William L. Osteen, Sr.) previously has found Rule 19(a) unsatisfied where the defendants "contend[ed] that the State claim[ed] an interest that it w[ould] be unable to protect without being joined . . ., [but the defendants] ha[d] not met the burden of producing any <u>evidence</u> showing the nature of th[at] interest . . . ." <u>RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.</u>, 921 F. Supp. 1457, 1464 (M.D.N.C. 1995) (internal citations, ellipses, and quotation marks omitted)

_____

[10](...continued)
at trial, shall be in writing and shall be accompanied by a brief <u>except as provided in section (j) of this rule</u>." M.D.N.C. LR7.3(a) (emphasis added). As pertinent, the cross-referenced section (j) provides that "[n]o brief is required . . ., unless otherwise directed by the Court, with respect to the following motions: . . . to add parties . . . ." M.D.N.C. LR7.3(j). The Court thus declines to take any action based on the absence of a brief from the Board. However, the Court notes that, even as to motions that do not require the filing of a brief, a movant "must state good cause therefor and cite any applicable rule, statute, or other authority justifying the relief sought." <u>Id.</u> For reasons set forth in the discussion that follows above, the Board's instant Motion to Join the State Parties neither establishes good cause for nor identifies authority warranting such action.

19

(emphasis added), aff'd, Nos. 96-1130, 96-1131, 103 F.3d 120 (table), 1996 WL 680724 (4th Cir. Nov. 26, 1996) (unpublished).

Second, even if credited, the Board's proffer regarding the position of the State Parties confirms that they know about this case, but do not wish to assert any claimed interest in it. Such circumstances also foreclose joinder under Rule 19(a):

> [T]he Commonwealth, well aware of this situation, never moved to intervene, and so it is apparently of the view that its interests either were not at stake or were aligned with those of [one of the parties]. Since its decision to forgo intervention indicates that the Commonwealth does not deem its own interests substantially threatened by the litigation, the court should not second-guess this determination, at least absent special circumstances. Thus the requirements of Rule 19(a) have not been met.

United States v. San Juan Bay Marina, 239 F.3d 400, 406-07 (1st Cir. 2001) (internal citations omitted); accord Moss v. Spartanburg Cnty. Sch. Dist., No. 7:09-1586-HMH, 2010 WL 2136642, at *1-2 (D.S.C. May 25, 2010) (unpublished) ("The defendant-school district] argues that South Carolina should be joined as a co-defendant because its ability to protect its interest in the constitutionality of a state statute . . . will otherwise be impeded. . . . [T]he court finds that the state of South Carolina is not a required party under Rule 19(a)(1). . . . South Carolina has not attempted to intervene to claim an interest relating to the subject of this action . . . . While the state of South Carolina may have an interest in the outcome of this case, that is simply not enough to fall into one of the two categories of Rule 19(a)." (internal quotation marks omitted)); see also Sindia Expedition, Inc. v. Wrecked and Abandoned Vessel, known as "The Sindia", 895

20

F.2d 116, 122 (3d Cir. 1990) (concluding that, because state failed to "voluntarily appear[] and assert[] its rights," state was "manifestly unconcerned about the effect of the litigation"); <u>Continental Cas. Co.</u>, 2008 WL 1752231, at *4 n.2 ("Presumably, [the purported required party] is aware of this litigation, and has entrusted [one of the defendants] to protect any interest [the purported required party] has in the litigation."); <u>RPR & Assocs.</u>, 921 F. Supp. at 1464 ("To the extent that the State has any interest, it could protect its rights by appearing voluntarily.").[11]

---

[11] The only case cited by the Board in support of its position, <u>National Union Fire Ins. Co. v. Rite Aid of S.C., Inc.</u>, 210 F.3d 246, 251 (4th Cir. 2000) (<u>see</u> Docket Entry 15 at 3), does not support a different conclusion. In that case, a Pennsylvania-based insurer brought suit in federal court in South Carolina against a South Carolina-based corporation, seeking a declaratory judgment of non-coverage and basing jurisdiction on diversity of citizenship. <u>See</u> <u>National Union</u>, 210 F.3d at 247-48 & n.1. The South Carolina-based corporation and its Pennsylvania-based parent corporation then filed a parallel action against the Pennsylvania-based insurer in Pennsylvania state court. <u>Id.</u> at 248. The South Carolina-based corporation thereafter "moved to dismiss the [federal case] pursuant to Federal Rules of Civil Procedure 12 and 19 on the ground that [its Pennsylvania-based parent corporation] was a necessary and indispensable party to the action whose joinder would destroy complete diversity of citizenship." <u>Id.</u> at 248-49. When the district court granted that motion, the Pennsylvania-based insurer appealed on the principal ground that the Pennsylvania-based parent corporation "[wa]s not a necessary party under Federal Rule of Civil Procedure 19 because its interests [we]re adequately represented by [the South Carolina-based corporation]." <u>Id.</u> at 249. In so doing, the Pennsylvania-based insurer "concede[d] that [the Pennsylvania-based parent corporation] possesse[d] a claimed interest relating to the subject of the action." <u>Id.</u> at 250. As noted above, in this case, Plaintiffs have not conceded that the State Parties have claimed an interest in this case and the Board has not carried its burden of proving such. <u>National Union</u> thus has no discernible bearing on this case.

Under these circumstances, the Board's Motion to Join the State Parties (Docket Entry 15) will be denied.[12]

C. Motion for Judgment on the Pleadings

"Plaintiffs move for judgment as a matter of law on the counterclaim filed by [the Board], pursuant to Fed. R. Civ. P. Rule 12(c) . . . ." (Docket Entry 22 at 1.) Courts "apply[] the same standard for Federal Rule of Civil Procedure 12(c) motions as for motions made pursuant to Rule 12(b)(6)." Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009). Under this standard, the Court must "assume the facts alleged in the complaint [or counterclaim] are true and draw all reasonable factual inferences in [the non-movant's] favor." Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). A complaint or counterclaim thus falls short if it does not "contain sufficient factual matter, accepted as true, to 'state a

_____

[12] Consistent with the plain language of 28 U.S.C. § 636(b)(1), as construed in Aluminum Co. of Am., Badin Works, Badin, N.C. v. United States Envtl. Prot. Agency, 663 F.2d 499, 501 (4th Cir. 1981), the undersigned Magistrate Judge will enter an order, rather than a recommendation, as to the Board's instant Motion to Join the State Parties. See generally William E. Smith Trucking, Inc. v. Rush Trucking Ctrs. of N.C., Inc., No. 1:11CV887, 2012 WL 214155, at *2-6 (M.D.N.C. Jan. 24, 2012) (unpublished) (analyzing Section 636(b)(1), in light of Aluminum Co. of Am. and more recent unpublished Fourth Circuit decisions). Courts across the country, including at least one in the Fourth Circuit, have taken and/or endorsed this method of handling such motions. See, e.g., Clardy v. Mullens, No. 12CV11153, 2012 WL 2673334, at *1 n.1 (E.D. Mich. July 5, 2012) (unpublished); Ellsworth v. Corizon Health, Inc., No. CV-11-8070-PCT-RCB-MEA, 2012 WL 1267995, at *1 (D. Ariz. Apr. 16, 2012) (unpublished); Keck v. Virginia, No. 3:10CV555, 2011 WL 2708357, at *1, 2 (E.D. Va. July 12, 2011) (unpublished); Spencer v. Cannon Equip. Co., Civil No. 07-2437(JBS), 2009 WL 1883929, at *4 (D.N.J. June 29, 2009) (unpublished); Cincinnati Ins. Co. v. Hawkins, Civil Action No. 07-535, 2007 WL 2310866, at *1 n.1 (W.D. Pa. Aug. 9, 2007) (unpublished).

claim to relief that is plausible on its face.'" <u>Ashcroft v.</u>
<u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted)
(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

The Board's Answer to the Amended Complaint and Counterclaim
(Docket Entry 12) alleges these four "Claim[s] for Relief":

(1) "[t]he Board <u>is aggrieved by the [SRO's] decision</u>
concluding that O.M. was denied a [FAPE] when the [S]chool [S]ystem
failed to provide the DEC 5 at the conclusion of the [July 30,
2008] IEP meeting and allowed an individual who was not a member of
the IEP team to draft the DEC 5" (Docket Entry 12 at 23, ¶ 37
(emphasis added));

(2) "<u>in the event that this Court determines that the [SRO's]</u>
<u>decision is void</u>, the Board is aggrieved by the ALJ's finding that
the final decisions regarding O.M. were improperly delegated to
someone outside the IEP team meeting process" (<u>id.</u> at 24-25, ¶ 44
(emphasis added));

(3) "[t]he Board <u>is aggrieved by the [SRO's] decision</u> (and, in
the alternative, the ALJ's decision) concluding that the Board
. . . deni[ed] [O.M. a] FAPE when it failed to provide [the
Parents] with a DEC 6 prior to October 13, 2008 . . . and
concluding that O.M. was denied a [FAPE] when the [S]chool [S]ystem
failed to provide services to O.M. between August 25, 2008, and
October 29, 2008" (<u>id.</u> at 25-26, ¶¶ 50-51 (emphasis added)); and

(4) "<u>[i]n the event that this Court determines that the</u>
<u>[SRO's] decision is void</u>, the Board is aggrieved by the ALJ's
finding that the program proposed by the Board at the July 30,

23

2008, IEP team meeting denied O.M. a FAPE because it was not reasonably calculated to meet O.M.'s needs in the least restrictive environment" (id. at 27-28, ¶ 64 (emphasis added)).

According to Plaintiffs, these "four 'Claims for Relief' [are] all directed to the ALJ's conclusion that the [Board] failed to offer O.M. a FAPE." (Docket Entry 23 at 12 n.10.)  In fact, however, as to the First and Third Claims for Relief, the Board challenges conclusions by the SRO and, as to the Second and Fourth Claims for Relief, the Board proposes to challenge findings by the ALJ only if the Court adopts Plaintiffs' position that the IDEA prohibited the entire proceeding before the SRO.  (See Docket Entry 12 at 23-28, ¶¶ 37, 44, 50, 51, 64.)  On that point, Plaintiffs contend that the "IDEA authorizes an appeal to a SRO only if the due process hearing 'is conducted by a [LEA].'"  (Docket Entry 23 at 19 (quoting 20 U.S.C. § 1415(g)(1)) (emphasis added).)

Plaintiffs' argument in this regard confuses the concepts of requiring, authorizing, and prohibiting.  Under the IDEA:

> A parent is entitled to "an impartial due process hearing, which shall be conducted by the [SEA] or by the [LEA], as determined by State law or by the [SEA]."  20 U.S.C. § 1415(f)(1)(A).  If the state elects to allow the [LEA] to conduct the due process hearing, it must provide for an appeal to the [SEA].  Id. § 1415(g)(1).  If the due process hearing is held by the state, no appeal is required.  The former system [in which the LEA conducts a due process hearing before the required right of appeal to the SEA] is often referred to as a two-tiered system, while the latter [where the LEA does not conduct such a hearing] is known as a one-tiered system.
>
> . . . .
>
> North Carolina has adopted a modified two-tier system, in which both levels are conducted by the state.  The due process hearing is carried out according to the North

24

Carolina Administrative Procedure Act . . . [which] specifies that an [ALJ] will be selected by the [OAH]. The [LEA] is not involved in selecting the [ALJ] or otherwise conducting the hearing, except to the extent of being a defendant in the proceeding.

Because the hearing and the appeal are conducted by the same entity, when a [SRO] overrules an ALJ, the court is confronted with opposing opinions issued by the same entity . . . [and] must accept the statement issued by the individual with the authority to issue the agency's definitive opinion. In this context, that individual is clearly the [SRO], not the ALJ.

Wittenberg ex rel. J.W. v. Winston-Salem/Forsyth Cnty. Bd. of Educ., No. 1:05CV818, 2006 WL 2568937, at *2, 4 (M.D.N.C. Sept. 1, 2006) (unpublished) (Osteen, Sr., J.) (emphasis added).

The foregoing discussion demonstrates that the IDEA requires the availability of an appeal from the local level to the state level, if a state chooses to begin the administrative process at the local level. In addition, the foregoing discussion shows that the IDEA authorizes states to conduct the administrative process solely at the state level and does not require any appeal when the administrative process occurs solely at the state level. However, nothing in the foregoing discussion (or in Plaintiffs' brief in support of their instant Motion for Judgment on the Pleadings (see Docket Entry 23 at 18-19))[13] establishes that the IDEA prohibits

---

[13] As noted above, Plaintiffs quote Section 1415(g)(1) of the IDEA in asserting that the "IDEA authorizes an appeal to a SRO only if the due process hearing 'is conducted by a [LEA].'" (Docket Entry 23 at 19.) That statutory provision speaks only to the protection of the right of aggrieved parties to get a state-level review of claims under the IDEA, if the state opts to start the administrative process at the local level; it gives no indication of an intent by Congress to silently restrict how a state may set up its state-level administrative process, if the state opts not to begin administrative proceedings at the local level. See 20 U.S.C.
(continued...)

states (like North Carolina and others, see Wittenberg, 2006 WL 2568937, at *4 n.4 (noting that at least three other states have adopted the same administrative structure as North Carolina)) which choose to conduct the administrative process solely at the state level from dividing that state-level process into two steps (i.e., hearing before ALJ and appeal to SRO). Accordingly, Plaintiffs cannot secure judgment as a matter of law based on the contention that the IDEA renders void all of the SRO's action in this case.

Given that conclusion, it would appear that only the First and Third Claims for Relief in the Board's counterclaim remain at issue (because they assert aggrievement as to decisions by the SRO, rather than claims entirely contingent upon a ruling by the Court that the SRO should have played no role in the administrative process). The First Claim for Relief concerns the SRO's decision finding a denial of a FAPE related to the preparation and provision (or absence of provision) to the Parents of the "DEC 5" proposal

---

[13](...continued)
§ 1415(g)(1). Plaintiffs also cite Section 1415(i)(1) and (2)(A) of the IDEA as authority for the proposition that, "[i]f the hearing is not conducted by the LEA, no SRO review is authorized." (Docket Entry 23 at 19.) Nothing in the language of those provisions precludes a state from designating an SRO, rather than the ALJ who presides over a state-level hearing, from serving as the final decision-maker for the state. See 20 U.S.C. § 1415(i). Finally, Plaintiffs quote from Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 (2007), and then cite the same pages of that decision after the statement "[t]hus, [the] IDEA authorizes an appeal to a SRO only if the [LEA] conducts the due process hearing." (Docket Entry 23 at 19.) The case in question concerned the right of parents to proceed pro se in federal court when asserting claims under the IDEA. See Winkelman, 550 U.S. at 526. Nothing about the language quoted and cited by Plaintiffs addresses the question of whether the IDEA prohibits states from structuring their administrative process in the manner that North Carolina and other states have. See id. at 525-26.

regarding services for O.M. (See Docket Entry 12 at 23, ¶ 37.) The Third Claim for Relief concerns the SRO's decision finding a denial of a FAPE related to the failure to timely provide the Parents with the "DEC 6" consent to services form and related delay in provision of services to O.M. (See id. at 25-26, ¶¶ 50-51.)

Plaintiffs' arguments on these points rely on numerous findings by the ALJ. (See Docket Entry 23 at 15-18.) The Board objects to the Court "decid[ing] the Board's counterclaims by reviewing the ALJ decision alone . . . [without reviewing] the vast majority of the administrative record." (Docket Entry 26 at 7.) In other words, as the Board puts it, "[t]here is no means of assessing the support in the record for the ALJ's findings on a Motion for Judgment on the Pleadings . . . ." (Id. at 8.)

The Board's position appears well-taken:

> [A] puzzling procedural problem arises whenever the district court adjudicates administrative appeals, because the Federal Rules of Civil Procedure do not plainly speak to how such appeals should be handled. It is hard to see what else the district court could do as a practical matter under the [IDEA] **except read the administrative record**, consider [any] new evidence, and make an independent judgment based on a preponderance of evidence and giving due weight to the hearing officer's determinations. The district court's independent judgment is not controlled by the hearing officer's recommendations, but neither may it be made without due deference. Because this appears to be what Congress intended under the [IDEA], we conclude that it is the right thing to do, even though it does not fit well into any pigeonhole of the Federal Rules of Civil Procedure.

Capistrano Unified Sch. Dist. v. Wartenberg by and through Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995) (emphasis added); see also Brendan K. Ex rel. Lisa K. v. Easton Area Sch. Dist., Civil Action No. 05-4179, 2007 WL 1160377, at *1 (E.D. Pa. Apr. 16, 2007)

(unpublished) (noting, in IDEA case, that court "held in abeyance all other arguments [beyond timeliness] for later review after the filing of the administrative record"); 20 U.S.C. § 1415(i)(2)(C) ("In any action brought [by a party aggrieved by an administrative decision under the IDEA], the court -- (i) <u>shall receive the records of the administrative proceedings</u>; (ii) shall hear additional evidence at the request of a party; and (iii) <u>basing its decision on the preponderance of the evidence</u>, shall grant such relief as the court determines is appropriate." (emphasis added)).[14]

---

[14] To the extent Plaintiffs argue that the Board failed to plead sufficiently detailed facts in its counterclaim to warrant the Court even bothering to look at the administrative record to see if the Board's counterclaim has merit (<u>see</u> Docket Entry 29 at 3-4), the Court should decline to dismiss at this stage because "[t]he pleading requirements of Rule 8 must be read in light of the fact that this is an appeal of an administrative [] decision . . . [such that the parties] have notice of the facts not only in the [pleading] but also in the record below. This is different than an initial non-appeal complaint [or counterclaim], where the [pleading] is the only document informing a defendant of the claim being asserted. Additionally, [the relevant pleading in this case] does not merely state that it is an appeal of [an administrative] decision . . . [but instead] states [the party's] position that [the administrative decision-maker] did not engage in an appropriate analysis of the facts and that the conclusion [of the administrative decision-maker] was contrary to the facts presented . . . ." <u>Dumont Bd. of Educ. v. J.T. ex rel. I.T.</u>, Civil Action No. 09-5048, 2010 WL 199630, at *2 (D.N.J. Jan. 14, 2010) (unpublished); <u>accord</u> <u>Department of Educ., State of Hawaii v. Patrick P. Ex rel. Gordean L.-W.</u>, Civil No. 12-438LEK-BMK, 2012 WL 5414964, at *5 (D. Hawaii Nov. 5, 2012) (unpublished) ("The crux of the DOE's Complaint is that the Hearings Officer erred in concluding that the DOE denied Student a FAPE because the Hearings Officer improperly relied upon speculative evidence . . . . [T]he DOE did not identify specific evidence that the DOE alleges was speculative, and the DOE did not identify specific conclusions of law it asserts was based on the allegedly speculative evidence. This Court, however, concludes that the allegations in the Complaint are sufficient to alert Defendants to the DOE's position that the Hearings Officer's Decision is not supported by sufficient evidence and to allow Defendants to respond with a similarly
(continued...)

In light of the foregoing considerations, the Court should decline to dismiss the Board's counterclaim at this stage.

## IV. CONCLUSION

Plaintiffs' Amended Complaint "alleges sufficient facts to invoke subject matter jurisdiction[,]" <u>Kerns</u>, 585 F.3d at 192. The Board has failed to show that the State Parties "claim[] an interest," Fed. R. Civ. P. 19(a)(1)(B), that would warrant their joinder. Plaintiffs have failed to show entitlement to judgment as a matter of law on the Board's counterclaims.

**IT IS THEREFORE RECOMMENDED** that the Board's Motion to Dismiss (Docket Entry 19) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Plaintiffs' Motion for Judgment on the Pleadings (Docket Entry 22) be **DENIED.**

**IT IS ORDERED** that the Board's Motion to Join the State Parties (Docket Entry 15) is **DENIED.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 22, 2013

---

[14](...continued)
general position that Defendants believe the Hearings Officer's Decision should be affirmed because it is supported by sufficient evidence." (internal citation omitted)).